# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
# CHARLOTTESVILLE DIVISION

| | |
|---|---|
| JULIE RITCHIE,<br><br>                              *Plaintiff,*<br><br>v.<br><br>ROGER GUNDEN,<br><br>                              *Defendant.* | CASE NO. 3:24-cv-6<br><br>MEMORANDUM OPINION<br>& ORDER<br><br>JUDGE NORMAN K. MOON |

Plaintiff Julie Ritchie brings suit against Defendant Roger Gunden, her former landlord, based on his failure to accommodate her emotional support dogs and refusal to renew her lease. She brings claims for retaliation and failure to make reasonable accommodation in violation of the Fair Housing Act and the Virginia Fair Housing Law, as well as common law negligence. The relief she requests includes a declaration that Defendant violated the Fair Housing Act.

Defendant's Motion to Dismiss, Dkt. 5, seeks dismissal of the claims based on negligence, retaliation, and declaratory relief. The motion is fully briefed. The Court, having considered the parties' arguments, concludes that oral argument would not assist in resolving the motion and so will rule on the briefs.

For the reasons explained below, the Court will **grant** the Motion in its entirety, dismissing all counts save Plaintiff's reasonable accommodation claims.

## Background

These facts are drawn entirely from the Complaint, Dkt. 1, and are assumed true for purposes of resolving this motion. *See King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

Plaintiff alleges that she suffers from multiple disabilities, including bipolar disorder, severe PTSD, depression, anxiety, and a cracked skull. Dkt. 1 ¶ 4. On approximately May 31, 2020, Plaintiff contracted to rent an apartment from Defendant in Faber, Virginia. ¶ 7. Plaintiff's commute from the apartment to her workplace was less than ten minutes. ¶ 5. The rental property had four units, and the other renters kept pets. ¶¶ 6, 20.

While a tenant of Defendant, Plaintiff acquired two service dogs that reduce the effects of her disabilities. ¶¶ 10–11. The dogs are American Staffordshire Terriers. ¶ 12.

In April 2021, Defendant saw the dogs and, assuming that they were pit bulls, informed Plaintiff that she could not keep pit bulls on his property. ¶ 13. Plaintiff told Defendant that the dogs were not pit bulls, and that she had a doctor's note explaining her need for emotional support animals. ¶¶ 14–15. Defendant stated that he would need to prove to his insurance company that the dogs were not pit bulls. ¶ 16. Plaintiff provided a note from her veterinarian stating that the dogs were American Staffordshire Terriers. ¶ 17.

On April 20, 2021, Plaintiff contacted Housing Opportunities Made Equal ("HOME"). ¶ 18. At some point after speaking with HOME, Plaintiff submitted a reasonable accommodation request in writing to Defendant. ¶ 19.

On April 29, Defendant gave Plaintiff a letter stating that her dogs had not been approved and could not stay on the property. ¶ 20. The letter also said that the building had a "no pets" policy. *Id.* Defendant wrote "If you want to get another dog, I will need to meet the dog and approve. Not just any dog will be approved. Pit bulls will not be approved." *Id.* The letter also included the statement "Your current lease expires May 30, 2021. If you continue to keep the dogs the lease will not be renewed." ¶ 24. Plaintiff alleges that Defendant refused to grant a reasonable accommodation. ¶ 30.

Following this letter, on "multiple and separate" occasions Defendant came to Plaintiff's place of employment and asked if she found a new place for her dogs. ¶ 22. This occurred in front of Plaintiff's colleagues. *Id.* On each occasion, Plaintiff asked Defendant to stop coming to her place of employment asking about the dogs, as she wanted to keep her personal life separate from her work. ¶ 23. Plaintiff did not get rid of the dogs, because she needed them to manage her disability, they were not pit bulls, and her neighbors were not abiding by a "no pets" policy. ¶ 25.

On May 31, 2021, Defendant "did not renew the Plaintiff's lease." ¶ 26. The next day, Plaintiff got a two-week extension, making her last day in the apartment June 15, 2021. ¶ 31.

On June 8, Plaintiff spoke with HOME again, and then submitted a second reasonable accommodation request letter to Defendant "for him to provide to his insurance company regarding their breed restriction." ¶ 32. At some point in the month of June, Plaintiff recorded a conversation with Defendant in which Defendant said that the Fair Housing Act did not apply because he was not renewing Plaintiff's lease. ¶ 21.

Plaintiff alleges that she was injured by losing an important housing opportunity, and also suffered emotional distress and violation of her civil rights. ¶ 34.

## **Legal Standard**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), with all its allegations taken as true and all reasonable inferences drawn in a plaintiff's favor, *King*, 825 F.3d at 212. A motion to dismiss "does not, however, resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* at 214.

Although the complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation omitted). A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (internal quotation marks omitted). This is not to say Rule 12(b)(6) requires "heightened fact pleading of specifics," instead a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (providing that "only a complaint that states a plausible claim for relief survives a motion to dismiss").

## Discussion

The resolution of the Motion to Dismiss, Dkt. 5, hinges on three questions. First, can Plaintiff bring a claim for negligence based on violation of the Fair Housing Act ("FHA"), 42 U.S.C. 3601 *et seq.*? Second, has Plaintiff adequately alleged that Defendant retaliated against her due to her exercise of her statutory rights? And third, is declaratory relief appropriate in this case, when another claim addresses essentially the same issue?

1. *Plaintiff's Negligence Claim*

Plaintiff alleges that "Defendant injured Plaintiff by his want of ordinary care or skill in the management of her [sic] property or her [sic] agents in violation of common law negligence." ¶ 43. The Complaint offers no clarity about what, exactly, Defendant did that was negligent. The closest thing to clarification is the assertion that "[i]n doing the acts of which [Plaintiff]

4

complains, the Defendants [sic] acted with reckless disregard for the requirements of the Fair Housing Act and [Plaintiff's] federally protected rights." ¶ 35.

Defendant argues that Plaintiff cannot bring a claim for negligence because Defendant had no duties to Plaintiff outside of their contract. ¶ 4. Further, Defendant posits that Plaintiff cannot recover in tort for the breach of a contractual duty: this is barred by Virginia's application of the source of duty rule.[1] *Id.*

Plaintiff does not adequately plead a negligence claim. Actional negligence requires that there must be a legal duty, a breach of that duty, and resulting injury which could have been reasonably foreseen by the exercise of reasonable care. *RGR, LLC v. Settle*, 764 S.E.2d 8, 20 (Va. 2014) (quoting *Atlantic Co. v. Morrisette,* 94 S.E.2d 220, 221–22 (Va. 1956)). Defendant is correct that under Virginia law, tort claims cannot be rooted in violation of a contractual duty. *See Tingler v. Graystone Homes, Inc.,* 834 S.E.2d 244, 254 (Va. 2019). And Virginia law is clear that "the violation of a statute does not, by that very fact alone, constitute actionable negligence or make the guilty party negligent *per se.*" *Williamson v. Old Brogue, Inc.,* 350 S.E.2d 621, 624 (Va. 1986). The Supreme Court of Virginia further stated that "a statute may define the standard of care to be exercised where there is an *underlying common-law duty*, but the doctrine of negligence *per se* does not create a cause of action where none otherwise exists." *Id.* (emphasis added).

Plaintiff does not really say what Defendant did to give rise to a negligence claim. She neither identifies any common law, non-contractual duty which Defendant would have violated nor attempts to set out the necessary elements of negligence per se based on Defendant's alleged

---

[1] When reviewing a state law claim, a federal court applies state substantive law. *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 74 (4th Cir. 2016), citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

statutory violation. Plaintiff does correctly contend that a contractual relationship is not required for plaintiffs to bring claims under the FHA, Dkt. 12 at 1–2, *see Bank of America Corporation v. City of Miami, Fla.*, 581 U.S. 189 (2017). However, plaintiffs vindicate their rights under the FHA by bringing claims *under that statute* rather than through an independent common law cause of action.

Simply put, Plaintiff alleges next to nothing to support her negligence claim, and so the Court will grant Defendant's motion to dismiss it.

2. *Plaintiff's Claim for Retaliation in Violation of the Fair Housing Act, 42 U.S.C. § 3617 and Virginia Fair Housing Law, Va. Code § 36-96.5*

In the portion of her Complaint addressing her retaliation claim, Plaintiff realleges and incorporates all her previous statements. Dkt. 1 ¶ 44. She also states "Defendant injured Plaintiff by harassing retaliating [sic] against my Plaintiff by pressuring her to leave or find somewhere else for the dog [sic] to go in violation of the Federal Fair Housing Act and the Virginia Fair Housing Act [sic]." ¶ 45.

In his Motion to Dismiss, Defendant argues that Plaintiff does not allege sufficient facts to support a retaliation claim under either the FHA or the Virginia Fair Housing Law ("VFHL"). Dkt. 6 at 5–6. He maintains that the allegations that he came to her workplace to ask about the dogs and that he declined to renew her lease do not suffice to show retaliation. *Id.* Refusing her reasonable accommodation request, he further argues, may support a claim *for failure to accommodate* but does not support a separate cause of action for retaliation. *Id.* at 6.

Plaintiff responds that she engaged in a protected activity "because she asserted her rights to request a reasonable accommodation." Dkt. 10 at 5. She likewise argues that her consultation with HOME was a protected activity, and that Defendant took adverse action against her by

6

refusing to renew her lease and approaching her at work. *Id.* The causal relationship she identifies is "that Defendant tied the nonrenewal of her lease to her retention of the ESAs [emotional support animals] (¶ 24) and that he specifically asked about the dogs at her place of employment (¶ 22)." Dkt. 10 at 6.

To bring a retaliation claim under the FHA, Plaintiff must allege (1) that she was engaged in protected activity; (2) Defendant was aware of that activity; (3) Defendant took adverse action against her; and (4) a causal connection existed between the protected activity and the asserted adverse action. *See Hall v. Greystar Mgmt. Servs., L.P.,* 637 F. App'x 93, 98 (4th Cir. 2016) (laying out elements of FHA retaliation and stating that much of the Fourth Circuit's FHA jurisprudence draws on cases interpreting Title VII because the two statutes are "part of a coordinated scheme of federal civil rights laws enacted to end discrimination") (citations omitted). The VFHL's provision against retaliation mirrors the FHA's; *compare* VA. CODE. § 36-96.5 *with* 42 U.S.C. § 3617 ("It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of [that person] having exercised or enjoyed … any right granted or protected by [the FHA].")

Plaintiff does not plausibly allege retaliation. Notably, causation is lacking. Defendant's actions are tied *to her keeping dogs*, not to Plaintiff's exercise of FHA/VFHL rights. Plaintiff quotes Defendant as writing "Your current lease expires May 30, 2021. If you continue to keep the dogs the lease will not be renewed." ¶ 24. Nowhere in the Complaint does Plaintiff allege that any of Defendant's actions were motivated by the facts that Plaintiff exercised her FHA rights by speaking with HOME or making the reasonable accommodation request. As far as the lease non-renewal goes, the retaliation claim duplicates Plaintiff's claim for failure to make a reasonable accommodation rather than making out a separate cause of action.

To be sure, harassment can be a form of "interference"—that is, retaliation under the FHA—"provided that it is 'sufficiently severe or pervasive' as to create a hostile environment." *Abdelhalim v. Lewis*, No. 1:19-CV-858, 2020 WL 3271378, at *5 (E.D. Va. June 17, 2020) (quoting *Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96, 113 (3d Cir. 2017)).

Plaintiff also does not adequately allege harassment that interfered with her exercise of rights. She states that Defendant came to her workplace on "multiple and separate" occasions to ask whether she had found another place for the dogs, and that she asked him not to do so. ¶¶ 22–23. Without more specificity in the factual allegations as to how many times this happened, or severity of the questioning, there is simply nothing to support a conclusion that Defendant's actions rise to the level of hostile environment harassment.

3. *Plaintiff's Request for a Declaration that Defendant Violated the FHA*

In her prayer for relief, Plaintiff requests a declaration "that the defendant violated the Fair Housing Act." Dkt. 1 at 11. Defendant argues that Plaintiff is not entitled to a declaratory judgment because if Plaintiff prevails on her FHA failure to accommodate claim, that would establish the violation and declaratory relief would be duplicative. Dkt. 6 at 7–8.

Plaintiff responds that the Court has discretion to grant declaratory relief, and that it should do because the declaratory judgment serves public interest by cementing that a landlord must engage with his or her insurance company during the reasonable accommodation interactive process. Dkt. 10 at 11. Plaintiff points to the Fourth Circuit's guidance that a district court should grant declaratory relief "[w]hen it finds that the declaratory relief sought: (1) 'will serve a useful purpose in clarifying and settling the legal relations in issue,' and (2) 'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998)

(quoting *Aetna Casualty & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir.1937)); *see also Pitrolo v. Cnty. of Buncombe, N.C.*, 589 F. App'x 619, 628 (4th Cir. 2014) (citing *Aetna v. Ind-Com* for the additional factor of "whether the declaratory judgment action is being used merely as a device for procedural fencing.")

The Declaratory Judgment Act, 28 U.S.C. § 2201, creates a remedy, not a substantive cause of action. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) (stating that the Act "is procedural only. Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction") (citation omitted). Put differently, a declaratory judgment is simply the remedial procedural vehicle by which a court can declare the rights of the parties as to an underlying legal dispute over which jurisdiction is otherwise proper. *See* 10B Wright & Miller, Fed. Prac. & Proc. Civ. §§ 2751, 2754, 2756, 2766 (4th ed.). Its purpose is not to create a substantive tack-on claim for an already-existing plaintiff who is adjudicating an already-live legal issue. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 504 (1959).

The Court has discretion over whether to issue a declaratory judgment, and "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57. But nevertheless, to the extent Plaintiff wishes to obtain a judgment stating that Defendant violated the FHA, she would do so by proving her substantive FHA claim. After all, she cannot prevail on that claim without first establishing that Defendant committed the violation. And Plaintiff does not articulate how a declaratory judgment would further clarify the obligations of landlords under the FHA.

In conclusion, Defendant's Motion to Dismiss, Dkt. 5, is **GRANTED**.

It is so **ORDERED**.

The Clerk of the Court is hereby directed to send this Memorandum Opinion & Order to all counsel of record.

Entered this __17th__ day of April, 2024.

                                                        *[signature]*
                                                NORMAN K. MOON
                                                SENIOR UNITED STATES DISTRICT JUDGE